984 F.2d 1050
 61 USLW 2500, Fed. Sec. L. Rep. P 97,335
 In re: LYONDELL PETROCHEMICAL COMPANY SECURITIES LITIGATION.
Joseph H. LEVIT; Walter Bely; Elsie Bely; The Elsie Bely
IRA; Lucy Feder; Rosalind Jacobson; Ronald
Kassover; Hedy-Ann Kassover,
Plaintiffs-Appellants,
v.
LYONDELL PETROCHEMICAL COMPANY; Bob G. Gower; Fred P.
Rullo; Dan F. Smith; Robert E. Wycoff; Atlantic Richfield
Co.; Camron Cooper; James S. Morrison; Robert M. Shea;
Joseph A. Putz; William T. Butler; Dudley C. Mecum; Paul
R. Staley; Goldman Sachs & Co.; Salomon Bros., Inc.,
Defendants-Appellees.
 No. 91-55899.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 5, 1992.
Decided Jan. 29, 1993.
 
 Leonard B. Simon and Alan Schulman, Milberg, Weiss, Bershad, Spechthrie & Lerach, San Diego, CA, for plaintiffs-appellants.
 Ronald C. Redcay, Arnold & Porter; Thomas K. Braun, O'Melveny & Myers, Los Angeles, CA, for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before: POOLE, FERNANDEZ, and T.G. NELSON, Circuit Judges.
 T.G. NELSON, Circuit Judge:
 
 
 1
 This appeal arises from a class-action securities fraud suit against Lyondell Petrochemical Company ("Lyondell"), certain officers and directors of Lyondell, Goldman, Sachs & Co. and Salomon Brothers Inc., as the managing underwriters of Lyondell's initial public offering, and Atlantic Richfield Co. ("ARCO") as the former parent company of Lyondell (all hereinafter referred to collectively as the "Defendants"). Plaintiff Appellant Joseph Levit and other shareholders of Lyondell (hereinafter referred to collectively as the "Plaintiffs") allege Lyondell violated §§ 11 and 12 of the Securities Act of 1933 (15 U.S.C. §§ 77k and 77l) and § 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j) by misrepresentations made in Lyondell's prospectus, subsequent reports and oral presentations. The district court dismissed the action pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim on the ground that the contested statements did not contain actionable misrepresentations or omissions. We affirm.
 
 FACTS & PROCEDURAL HISTORY
 
 2
 On January 18, 1989, in an initial public offering, ARCO sold approximately one-half of its stock in Lyondell[1], a wholly-owned subsidiary of ARCO, amounting to forty-three million shares at $30 per share. The day before the offering, ARCO caused Lyondell to make a special distribution of $500 million to ARCO. To do so, Lyondell borrowed the money from Morgan Guaranty Trust Company ("Morgan Guaranty") and a syndicate of banks, which required Lyondell to submit financial projections.
 
 
 3
 The class period began on January 18, 1989. In June, 1989, Lyondell began to report declining earnings. Lyondell issued several press releases explaining that the decline was caused by problems associated with its olefins plant project and other factors. By November 14, 1989, the end of the class period, Lyondell stock had decreased in market price by more than fifty percent.
 
 
 4
 In June, 1990, Plaintiffs filed their original complaint alleging the initial public offering prospectus "falsely represented that Lyondell would continue to operate profitably and generate results and earnings at least at the levels that had been generated during 1988," and requesting class certification for all persons who purchased Lyondell common stock during the class period. Defendants moved to dismiss the complaint arguing it mischaracterized the language in the prospectus and other challenged statements.
 
 
 5
 In an order entered November 21, 1990, the district court dismissed the complaint with leave to file a second amended complaint, finding that the statements in Lyondell's prospectus "were highly qualified and not misleading, either individually or collectively."
 
 
 6
 On January 25, 1991, Plaintiffs filed their second amended complaint ("Amended Complaint") repeating the claim that the prospectus and later documents falsely represented that Lyondell would continue to operate profitably and generate earnings that would equal or exceed those of 1988. In addition, the Amended Complaint set forth new allegations that Lyondell failed to disclose to the public internal projections that were disclosed to Morgan Guaranty at the time of the offering. These projections indicated that 1989 income and revenues would be below 1988 levels.
 
 
 7
 On July 15, 1991, the district court granted Defendants' Rule 12(b)(6) motion to dismiss, holding that "as a matter of law, the Prospectus and other documents challenged in the Second Amended Complaint do not contain actionable misrepresentations or omissions." We have jurisdiction of Plaintiffs' timely appeal under 28 U.S.C. § 1291.DISCUSSION
 
 
 8
 Plaintiffs allege the Defendants violated sections 11[2] and 12[3] of the Securities Act of 1933 (15 U.S.C. §§ 77k and 77l) and section 10(b)[4] of the Securities Exchange Act of 1934 (15 U.S.C. § 78j). Each of these statutes has a common requirement that the plaintiff allege a material misrepresentation or omission in a prospectus[5], document or oral communication that caused him to purchase the security. Because this threshold requirement is identical in all three statutes, the following discussion is applicable to §§ 11, 12 and 10(b).
 
 
 9
 The Plaintiffs present three legal arguments: (1) certain statements in the prospectus gave the false impression that Lyondell's past performance would continue in the future; (2) forward-looking predictions made in the prospectus and the road-show were false or misleading; and (3) Lyondell's failure to disclose information contained in internal financial projections was an omission of a material fact. The first two issues are addressed in a separate unpublished Memorandum. The question of whether Lyondell had a duty to disclose internal projections is the subject of the present Opinion.
 
 
 10
 A dismissal for failure to state a claim under Fed.R.Civ.P. 12(b)(6) is a ruling on a question of law and as such is reviewed de novo. Oscar v. Univ. Students Co-op. Ass'n, 965 F.2d 783, 785 (9th Cir.1992) (en banc).
 
 
 11
 Plaintiffs argue that Lyondell's failure to disclose internal projections constitutes a material omission that rendered the company's forward-looking statements misleading. In order to prevail on this issue, Plaintiffs must show that Defendants had a legally cognizable duty to disclose the projections. Roeder v. Alpha Industries, Inc., 814 F.2d 22, 26 (1st Cir.1987). The Plaintiffs fail to make such a showing.
 
 
 12
 This court recognizes that the Securities Exchange Commission (SEC) "does not require a company to disclose financial projections." Vaughn v. Teledyne, Inc., 628 F.2d 1214, 1221 (9th Cir.1980); accord In re Convergent Technologies Sec. Litig., 948 F.2d 507, 516 (9th Cir.1991) (as amended on denial of rehearing en banc). Plaintiffs argue that notwithstanding Vaughn and Convergent, once Lyondell opened the door by presenting forecasts to Morgan Guaranty, it was obligated to tell the whole truth to the public. We decline to adopt a "whole truth" exception in cases such as this where a corporation has disclosed internal projections outside the confines of the company, but not to the public generally. A corporation may be called upon to make confidential projections for a variety of sound purposes where public disclosure would be harmful. For example, a bank concerned about the security of its loan might require the corporation to provide a worst-case prediction which may or may not happen. A far-reaching disclosure requirement might not be in the best interests of the market, the corporation's legitimate business plans and, ultimately, investors such as Plaintiffs.
 
 
 13
 The Sixth and Eleventh Circuits' cases upon which the Plaintiffs rely are distinguishable. In Levinson v. Basic, Inc., 786 F.2d 741, 746 (6th Cir.1986), vacated on other grounds, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988), the Sixth Circuit found defendants had a duty to disclose negotiation discussions because they expressly denied knowledge of any pending corporate developments when, in fact, they were engaged in merger discussions. In Rudolph v. Arthur Andersen & Co., 800 F.2d 1040, 1044 (11th Cir.1986), cert. denied, 480 U.S. 946, 107 S.Ct. 1604, 94 L.Ed.2d 790 (1987), the Eleventh Circuit held accountants generally have a duty to disclose to investors actual knowledge of a company's fraud. That court's "whole truth" discussion was dicta. Id. at 1043-44. Unlike the present case, those cases dealt with failure to disclose actual facts known at the time of the making of the prediction which affected the soundness or veracity of the forward looking statement. The outcome of the present case would be entirely different had Plaintiffs alleged Lyondell's internal predictions were based on existing negative factors known only to the company.
 
 
 14
 Plaintiffs also argue that SEC regulations require disclosure of the internal projections, citing Regulation S-K, 17 C.F.R. § 229.10 et seq., which provides, inter alia, that "known trends or uncertainties" be disclosed in certain filings with the SEC. See 17 C.F.R. § 229.303(a)(3)(ii). The Convergent court rejected a similar argument, observing that another SEC regulation, which expressly addresses forecasts, states that forward-looking information need not be disclosed. Convergent, 948 F.2d at 516 (citing 17 C.F.R. § 229.303(a), Instruction 7).[6]
 
 
 15
 In conclusion, we hold that under the facts pleaded in the Amended Complaint, Lyondell had no duty to disclose its internal projections.
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 Lyondell manufactures petrochemical by-products, primarily olefins used to make plastics, detergents, automotive antifreeze, and other consumer industrial products. Olefins products include ethylene and propylene. Eighty percent of Lyondell's profits came from the production and sales of olefins products
 
 
 [2]
 Section 11 provides, in pertinent part:
 In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security (unless it is proved that at the time of such acquisitions he knew of such untruth or omission) may ... sue--[liable persons listed].
 15 U.S.C. § 77k(a) (emphasis added).
 
 
 [3]
 Section 12 provides, in pertinent part:
 Any person who--
 ... (2) offers or sells a security ... by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission) ... shall be liable to the person purchasing such security from him....
 15 U.S.C. § 77l (emphasis added).
 
 
 [4]
 Section 10(b) provides, in pertinent part:
 [T]he Commission shall by rules or regulations deemed necessary or appropriate in the public interest or for the protection of investors permit the use of a prospectus for the purposes of subsection (b)(1) of section 5 [15 USCS § 77e(b)(1) ] which omits in part or summarizes information in the prospectus specified in subsection (a).... The Commission may at any time issue an order preventing or suspending the use of a prospectus permitted under this subsection (b), if it has reason to believe that such prospectus ... includes any untrue statement of material fact or omits to state any material fact required to be stated therein or necessary to make the statements therein, in the light of the circumstances under which such prospectus is or is to be used, not misleading.
 15 U.S.C. § 77j(b) (emphasis added).
 
 
 [5]
 Section 11 (15 U.S.C. § 77k) is limited to statements made in a prospectus
 
 
 [6]
 Instruction 7 of 17 C.F.R. § 229.303(a) provides, in pertinent part: "Registrants are encouraged, but not required, to supply forward-looking information. This is to be distinguished from presently known data which will impact upon future operating results, such as known future increases in costs of labor or materials. This latter data may be required to be disclosed."